# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NORFOLK SOUTHERN RAILWAY
CO.,

     Plaintiff,                     :      Case No. 2:19-cv-3486

     -vs-                             Judge Sarah D. Morrison
                                        Magistrate Judge Kimberly A. Jolson

BAKER HUGHES OILFIELD
OPERATIONS, LLC,

                                    :

     Defendant.

## OPINION AND ORDER

This matter is before the Court upon Defendant's Motion to Dismiss for Failure to Join Necessary and Indispensable Parties (ECF No. 5), Plaintiff's Memorandum in Opposition (ECF No. 7), and Defendant's Reply (ECF No. 9). For the reasons that follow, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

The following facts are alleged in the Complaint.

Sometime between December 2016 and February 2017, Baker Hughes Oilfield Operations, LLC ("Defendant") entered into an agreement to sell frac sand to Silver Creek Services or Silver Creek Logistics or Silver Line Logistics, Inc. (hereafter collectively referred to as "Silver Creek").[1] (Compl., ¶¶ 7, 15, 16). In order to ship 80 rail cars of frac sand to Wildcat

---

[1] According to Plaintiff, all three names refer to the same legal entity such that Plaintiff collectively refers to all three iterations as "Silver Creek." (Pl. Mem. Opp., 2 n.1, ECF No. 7). For purposes of this Opinion, the Court will do the same.

Minerals ("Wildcat") in Omal, Ohio, [2] Defendant used Francis Drilling Fluids, Ltd. ("FDF") to obtain rail services. (*Id.* ¶¶ 8–9). FDF used its login connection to engage BNSF Railway Company ("BNSF") to transport the frac sand shipments from Knife River, North Dakota (the point of origin) to Chicago, Illinois. (*Id.* ¶ 11). FDF then engaged Norfolk Southern Railway Company ("Plaintiff") to transport the frac sand shipments from Chicago, Illinois to Omal, Ohio. (*Id.*). Each of the frac sand shipments were transported, delivered, and accepted at the destination. (*Id.* ¶¶ 19, 20).

BNSF issued an electronic bill of lading for each frac sand shipment. (*Id.* ¶ 12). The bills of lading identified FDF as the shipper, Wildcat as the consignee, and Silver Creek as the party to receive the freight invoices for each shipment. (*Id.* ¶¶ 13–15; Freight Bills, ECF No. 5-4; Bills of Lading, ECF Nos. 7-1–2). FDF also marked that the shipments were "prepaid." (Compl., ¶ 18). There was no published or private through rate established between BNSF and Plaintiff for the route selected for the shipments. (*Id.* ¶ 21).

Upon billing FDF and/or Silver Creek, BNSF was paid for the freight charges it incurred. (*Id.* ¶ 24). Plaintiff billed Silver Creek for its freight charges but was never paid. (*Id.* ¶¶ 25–26).

On August 2, 2017, Plaintiff filed an action against Silver Creek Services, Inc., in the United States District Court for the Western District of Pennsylvania seeking to collect payment for the freight charges (Case No. 2:17-cv-1016). The action was dismissed without prejudice six months later by stipulation of the parties.

On April 3, 2018, Plaintiff filed an action against FDF in the United States District Court for the Western District of Louisiana seeking to collect payment for the freight charges (Case

---

[2] Defendant asserts that the point of destination was actually Hannibal, Ohio. (Motion, 1 n.1, ECF No. 5). The Court need not determine which party is correct in order dispose of the instant Motion.

No. 6:18-cv-448). On September 29, 2018, FDF filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas (Case No. 4:18-BK-35441). (Compl., ¶ 28). As a result, the Western District of Louisiana dismissed Plaintiff's lawsuit against FDF without prejudice, pending resolution of the bankruptcy proceedings. On February 2, 2019, Plaintiff filed a proof of claim for the freight charges in the bankruptcy action. No disbursement has been made to Plaintiff, but the bankruptcy action remains ongoing. (*Id.* ¶ 30).

On August 12, 2019, Plaintiff filed this action against Defendant alleging five alternative claims: (1) failure to pay rail common carrier freight charges; (2) breach of contract; (3) unjust enrichment; (4) promissory estoppel; (5) quantum meruit. (ECF No. 1). Plaintiff alleges that as the principal for FDF, Defendant remains liable for the freight charges owed to Plaintiff in the amount of $319,800.00 plus interest, late fees, attorney's fees, and other related charges. (*Id.* ¶ 32). On October 2, Defendant filed a Motion to Dismiss for Failure to Join Necessary and Indispensable Parties (ECF No. 5). Plaintiff filed its Memorandum in Opposition on October 24 (ECF No. 7), and Defendant filed its Reply on November 7 (ECF No. 9). The matter is now ripe for review.

## II.    LEGAL STANDARD

Fed. R. Civ. P. 12(b)(7) permits defendants to raise by motion the defense of failure to join a party under Rule 19. Pursuant to Fed. R. Civ. P. 19, there is a three-step test for determining whether an absent party must be joined. "First, the court must determine whether the party is necessary and should be joined under Rule 19(a). If the person or entity is a necessary party, the court looks to whether joinder is feasible, or if a lack of subject matter or personal jurisdiction makes joinder impossible. Third, if joinder is not possible, the court must weigh the equities of the situation pursuant to Rule 19(b) and determine if the suit can continue in the

party's absence or if the case should be dismissed because the party is indispensable." *Am. Express Travel Related Servs., Co. v. Bank One-Dearborn, N.A.*, 195 Fed. Appx. 458, 460 (6th Cir. 2006).

## III.   ANALYSIS

Defendant argues that FDF, Silver Creek, Wildcat, and BNSF are all necessary parties to this action because they are parties listed on the freight bills and Plaintiff has already filed actions against Silver Creek and FDF. Defendant further contends that Plaintiff's "allegations necessarily require a finding of liability against the Required Parties, impairing or impeding their interests, as well as exposing Baker Hughes to multiple or inconsistent obligations and judgments." (Def. Motion, 6, ECF No. 5). Plaintiff responds that another entity's potential liability to Plaintiff for the freight charges does not compel joinder of that party.

### A.   Potential Liability of the Non-Parties

There is no dispute that FDF was the shipper/consignor, Wildcat was the consignee, Silver Creek was designated as the "Party to Receive Freight Bill," and BNSF was the carrier for the first leg of the transport in the transaction at issue. (Bills of Lading, ECF Nos. 7-1–2). In order to decide whether FDF, Wildcat, Silver Creek, and/or BNSF are necessary parties to this action, the Court must first determine the relevance of the roles of the non-parties to the bills of lading and freight bills at issue.

"The bill of lading is the basic transportation contract between the shipper-consigner and the carrier; its terms and conditions bind the shipper and all connecting carriers." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982).

> The consignor, being the one with whom the contract of transportation is made, is originally liable for the carrier's charges and unless he is specifically exempted by the provisions of the bill of lading, or unless the goods are received and transported under such circumstances as to clearly indicate an exemption for him, the carrier is

entitled to look to the consignor for his charges.

*Id.* at 343 (internal quotations omitted); *see also Nat'l Bankers Trust Corp. v. Peak Logistics LLC*, No. 12-2268-STA-tmp, 2013 WL 1411237, at *3 (W.D. Tenn. Apr. 8, 2013).

"If delivery is made without payment, the consignee is also liable. If a shipment is accepted, the consignee is liable as a matter of law for the freight charges, even if payment is not demanded at the time of delivery." *Consol. Rail Corp. v. Briggs & Turivas, Inc.,* 678 F. Supp. 1298, 1300 (S.D. Ohio 1987) (internal citations omitted). However, if a bill of lading indicated that the freight charges had been "prepaid" by the consignor or shipper, the carrier may be estopped from demanding payment from the consignee. *Id.* at 1301; *see also Schneider Nat. Carriers, Inc. v. Rudolph Exp. Co., Inc.*, 855 F. Supp. 270, 273 (E.D. Wisc. 1994).

While the Sixth Circuit has not discussed the effect of directions to bill third parties on the face of a bill of lading, other courts have held that "send freight bill to" or "party to receive freight bill" language alone is not sufficient to relieve the shipper of primary liability. *See Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co*., 513 F.3d 949, 953–55 (9th Cir. 2008) (holding that absent a separate agreement of allocation of responsibility, a bill of lading that stated that the freight terms was prepaid and instructed the carrier to send freight bills to a third party was not sufficient to shift liability away from the shipper); *Missouri Pac. R.R. Co. v. Ctr. Plains Indus., Inc*., 720 F.2d 818, 819 (5th Cir. 1983) (holding that the "send freight bill to" language on its own was insufficient to transfer the obligation of payment); *CSX Transp., Inc. v. Meserole Street Recycling*, 618 F. Supp. 2d 753, 767–68 (W.D. Mich. 2009) (finding that the "Send Freight Bill To" language on the bill of lading merely indicated that the carrier expected payment from either the consignee or shipper but did not explicitly release the shipper from liability). "As a general matter, a shipper designates such a transfer [of liability] by 'exercising

the privilege made available by Section 7 of the Contract Terms and Conditions printed . . . on the bill of lading by the simple expedient of marking the Section 7 box[.]'" *Nat'l Bankers*, 2013 WL 1411237, at *4 (quoting *Missouri Pac. R.R.*, 720 F.2d at 819).

### B. The Non-Parties are Not Necessary to this Action

Under Fed. R. Civ. P. 19(a)(1):

A person who is subject to service of process . . . must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The burden is on the moving party to establish that a party is necessary for purposes of Rule 19(a). *Eagle Realty Invs., Inc. v. Dumon*, No. 18-cv-362, 2019 WL 608830, at *2 (S.D. Ohio Feb. 13, 2019). "The moving party may satisfy this burden through the production of affidavits or other relevant extra-pleading evidence." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 774 (S.D. Ohio 2014) (internal quotations omitted).

Starting with Rule 19(a)(1)(A), the Court must determine if the court can accord complete relief among Plaintiff and Defendant in the absence of FDF, Silver Creek, Wildcat, and/or BNSF. "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought." *School Dist. of City of Pontiac v. Sec'y. of U.S. Dept. of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) (internal quotations omitted).

"In general, the indispensable parties in a breach of contract action are the parties to the contract." *Russian Collections, Ltd. v. Melamid*, No. 2:09-cv-300, 2009 WL 4016493, at *6 (S.D. Ohio Nov. 18, 2009). However, under Ohio law,[3] "when an agent contracts for the benefit of an undisclosed principal, both the principal and agent are jointly and severally liable for a breach of the agreement." *Wahab Janitorial Servs. v. P.M. Group Mgmt.*, 831 N.E.2d 522, 524 (Ohio Ct. App. 1st Dist. 2005). FDF (as the shipper) and Plaintiff (as the carrier) are the parties to the contract (the bill of lading) that was allegedly breached. According to the Complaint, Plaintiff first learned that Defendant had hired FDF to obtain rail services for the shipments when it filed its lawsuit against FDF. Due to the alleged agency relationship between Defendant and FDF, Plaintiff may sue FDF as the shipper and/or it may sue Defendant as the undisclosed principal of the shipper. Thus, FDF is a permissive party to the action; it is not a necessary party under Rule 19(a). *See* Fed. R. Civ. P. 20(a)(2)(A) ("Persons . . . *may* be joined in one action as defendants if . . . any right to relief is asserted against them jointly, severally, or in the alternative . . . ." (emphasis added)).

Similarly, even if Wildcat may be liable to Plaintiff as the consignee,[4] Plaintiff is not required to join it in this action because Plaintiff "is under no requirement to join all parties who might be jointly and severally liable." *Yates v. Applied Performance Techs., Inc.*, 209 F.R.D 143, 149 (S.D. Ohio 2002) (internal quotations omitted).

Silver Creek was deemed the "Party to Receive Freight Bill" in the bills of lading. (ECF

---

[3] "When neither party raises a conflict of law issue in a diversity case, a federal court applies the law of the forum state." *Reilly*, 6 F. Supp. 3d at 769 (citing *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 764 (6th Cir. 2008)).
[4] "Under default terms, a consignee is liable for freight charge unless the bill of lading is marked 'prepaid.'" *Oak Harbor*, 513 F.3d at 955. Here, the bills of lading were marked "prepaid." (ECF Nos. 7-1–2).

Nos. 7-1–2). As discussed, that designation in and of itself does not reliever the shipper of primary liability. Moreover, the Section 7 boxes on the bills of lading (*Id.*), which would release the shipper from liability, were not checked here. *Missouri Pac. R.R.*, 720 F.2d at 819.

As to BNSF, while Defendant may want an "inquiry and disposition" regarding BNSF's receipt of payments from Silver Creek for its leg of the transport, that does not make BNSF a necessary party to *this* lawsuit. (Def. Motion, 7). There is no allegation that BNSF may be liable to Plaintiff for any part of the freight charges at issue. That BNSF is identified on the bills of lading or freight bills is insufficient to make its involvement necessary to accord complete relief between Plaintiff and Defendant.

Regardless of any claims Plaintiff may have filed against any of the non-parties in previous lawsuits, such action by itself does not make them necessary to this litigation. *Russian Collections*, 2009 WL 4016493 at *6. Rule 19(a)(1)(A) is only concerned with whether Plaintiff may receive complete relief from this defendant—Baker Hughes. Even if future litigation involving an absent party is inevitable if Plaintiff prevails in this lawsuit, Rule 19(a)(1)(A) only looks to those who are already parties. *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006). It "does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible." *Yates*, 209 F.R.D. at 149 (internal quotations omitted). Similarly, "it is irrelevant . . . that plaintiff may or may not be foregoing opportunities to sue other defendants for other wrongs." *Intercept Sec. Corp. v. Code-Alarm*, *Inc.*, 164 F.R.D. 215, 218 (E.D. Mich. 1995). Here, Plaintiff can receive complete relief from Defendant, which is all that matters under Rule 19(a)(1)(A).

The Court next considers Rule 19(a)(1)(B). "Rule 19(a)(1)(B)(i) exists to protect absentee parties, asking the Court to consider whether disposing of the matter in the parties' absence

would 'impair or impede the [parties'] ability to protect the interest." *School Dist. of City of Pontiac*, 584 F.3d at 266 (quoting Fed. R. Civ. P. 19(a)(1)(B)(i)). None of the requested non-parties are claiming an interest in the freight charges. *Russian Collections*, 2009-WL-4016493 at *6. Nor does Defendant allege that any non-party is entitled to collect the freight charges claimed by Plaintiff. In other words, "Defendant has failed to explain how the absent persons here have a legally protected interest in this case that could be harmed, legally or otherwise, by a judgment in their absence." *Intercept*, 164 F.R.D. at 219. Further, Defendant has failed to show how FDF, Wildcat, Silver Creek, or BNSF, "if not joined, could be limited in their ability either to bring a lawsuit against the plaintiff or defendant, or to defend themselves against a lawsuit by the defendant or plaintiff." *Id.*

Finally, the Court considers whether disposing of this action without FDF, Silver Creek, Wildcat Minerals, and/or BNSF would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Simply stating that Plaintiff's allegations "expose[] Baker Hughes to multiple or inconsistent obligations and judgments" (Def. Motion, 6), without pointing to facts or legal argument in support is insufficient to satisfy Defendant's burden as the moving party. *Reilly*, 6 F. Supp. 3d at 775. While it is possible that Defendant may bear the whole loss if it is found liable, that is not the equivalent of double liability. *Intercept*, 164 F.R.D. at 220. Similarly, even if a subsequent suit for contribution results in inconsistent judgments, that does not equate to "inconsistent obligations" for the purposes of Rule 19(a)(1)(B)(ii). *Id.*

Because FDF, Wildcat, Silver Creek, and BNSF are not necessary parties under Rule 19(a), there is no need to conduct the final two steps of the Rule 19 analysis. Defendant's Motion is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion. (ECF No. 5).

**IT IS SO ORDERED.**

 /s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE