UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NORFOLK SOUTHERN
RAILWAY COMPANY,

      Plaintiff,

    :

v.

    Case No. 2:19-cv-3486
    Judge Sarah D. Morrison
    Magistrate Judge Kimberly A. Jolson

BAKER HUGHES OILFIELD
OPERATIONS, LLC,

    :

      Defendants.

## OPINION & ORDER

This matter is before the Court on three motions. First, Plaintiff Norfolk Southern Railway Company moves for summary judgment on all of its claims against Defendant Baker Hughes Oilfield Operations, LLC. (ECF Nos. 61, 64). Baker Hughes, in turn, moves for summary judgment on all of Norfolk's claims. (ECF No. 65). Finally, Norfolk moves for sanctions and to preclude testimony. (ECF No 49). All motions are fully briefed.

### I. BACKGROUND

#### A. Factual Background

This lawsuit arises out of two freight shipments of frac sand in December 2016 and February 2017. (ECF No. 65, Baker's Mot., PageID 1587). Baker Hughes sold the frac sand to Silver Creek Services; per the terms of the bill of sale, Silver Creek was responsible for freight transportation costs to ship the sand from North Dakota to Ohio. (ECF No. 65-1, Bill of Sale, PageID 1617–18). Norfolk Southern was

1

not a party to sale. Despite Silver Creek's responsibility for the frac sand transportation, Baker Hughes actively coordinated shipping logistics after the sale. (ECF No. 65, Baker's Mot., PageID 1590; ECF No. 64, Norfolk's Mot., PageID 1542–43).

Shipment of the frac sand required the services of two rail carriers – BNSF Railway (the originating carrier) and Norfolk Southern. (ECF No. 61-2, Harris Decl., PageID 1044–45). Rail services are ordered through the originating carrier's online portal, from which the bill of lading is issued. (*Id.*). Baker Hughes, attempting to "get those 39 cars moving," did not have login credentials for BNSF's portal. (ECF No. 61-15, PageID 1211–16; ECF No. 63, Monaco Depo, PageID 1510–12). So, Baker Hughes instructed Francis Drilling Fluids ("FDF") to ship the sand. Baker Hughes had previously used FDF to arrange transportation of freight and, as to this frac sand, it instructed FDF to use FDF's login credentials to submit shipping instructions for the frac sand to BNSF's online portal. (ECF No. 60, Richard Depo, PageID 873–75; ECF No. 61-15, PageID 1216).

Specifically, Baker Hughes employee Mario Monaco instructed FDF employee Freddie Richard to "notify the railroad and enter the 'billing' (shipping instructions) in the BNSF system [...., and] ensure that the freight payer in the BNSF system is shown as Silver Creek." (ECF No. 61-14, PageID 1206–07). Mr. Monaco intended this to mean that "FDF was to contact [BNSF] and let them know when the cars were ready to be released and what location they needed to go." (Monaco Depo, PageID 1500). Only FDF could approve release of the rail cars because the cars

2

were on a site that FDF owned and controlled. (Richard Depo, PageID 963). Mr. Monaco further told FDF, "I'm going to be watching from my end and you need to watch from your end to make sure that Baker Hughes or FDF doesn't show up as the party to bill… other than that, the product needs to leave your facility and go wherever [Silver Creek] designate[s] that it needs to be delivered." (*Id.*, PageID 895–96).

Following these orders, FDF submitted the shipping instructions to the BNSF online portal and released the cars. (Richard Depo, PageID 885–86, 893–96, 986–87; ECF No. 57, Franklin Depo, PageID 645–46; Harris Decl., PageID 1044–45). Bills of lading for two shipments were issued on December 16, 2016 and February 21, 2017. (ECF Nos. 61-16, 61-17). The bills of lading were marked "prepaid," FDF was identified as the shipper, Silver Creek was the "bill to" party, and the Section 7 nonrecourse boxes were not checked. (*Id.*; See also ECF No. 7-2).

The approval of both Silver Creek and Baker Hughes was necessary for completion of the frac sand shipments. (Richard Depo, PageID 902, 989). Ultimately, approval was given, the rail cars were released, and the frac sand was delivered to its destination. (Harris Decl., PageID 1045). For its services, Norfolk sent an invoice to Silver Creek (the "bill to" party), but Silver Creek refused to pay the charges. (*Id.*, PageID 1046).

### B. Procedural Background

Prior to commencing this action, Norfolk sued Silver Creek for the unpaid freight charges but voluntarily dismissed that suit. (ECF No. 65, PageID 1587).

3

Norfolk then filed a lawsuit against FDF for the unpaid freight charges but FDF filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. (*Id*.). Norfolk received a payment of $2,987.91 from FDF in accordance with FDF's approved Chapter 11 bankruptcy plan. Norfolk then commenced this action against Baker Hughes on August 12, 2019. (ECF No. 1). Norfolk brought claims for: Failure to Pay Rail Common Carrier Freight Charges (Count I); Breach of Contract (Count II); Unjust Enrichment (Count III); Promissory Estoppel (Count IV); and Quantum Meruit (Count V). (ECF No. 1).

For its part, Baker Hughes brought a third-party complaint against Defendants Silver Creek Services, Inc. and Silver Line Logistics, Inc. (ECF No. 15). Those defendants failed to answer Baker Hughes's complaint, and the clerk entered default. (ECF No. 41). Baker Hughes has not moved for default judgment against either third-party Defendant.

Norfolk has now moved for sanctions and to preclude testimony. (ECF No. 49). Both parties have moved for summary judgment on all five claims alleged in Norfolk's complaint. (ECF Nos. 61, 65).

## II. SUMMARY JUDGMENT MOTIONS

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving

4

party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### B. Preliminary Matter: Inadmissible Hearsay

The Court will first address Baker Hughes's arguments that Norfolk's Motion relies on inadmissible hearsay statements contained in emails. (ECF No. 68, Resp., PageID 2364–66).

Federal Rule of Civil Procedure 56 requires that materials cited in a summary judgment motion are capable of presentation in an admissible form. Fed.

5

R. Civ. P. 56(c)(2). A party may object to the use of a cited material if it does not believe the material is admissible in evidence. *Id.* A court may not consider inadmissible hearsay on summary judgment. *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) (citing *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)).

Here, Baker Hughes generally refers to twenty-one emails cited by Norfolk as hearsay or speculation. (ECF No. 68, PageID 2365). In doing so, it fails to identify the contested evidence with specificity and provides no argument as to the basis of each objection. (*Id.*). This alone warrants denial of Baker Hughes's objections. *See Bailey v. Hamilton Cty. Gov't*, No. 1:19-CV-13-DCLC-SKL, 2020 WL 5859403, at *2 (E.D. Tenn. Oct. 1, 2020) (denying broad hearsay objections made without substantiation because the Court was unable to determine the specific basis of the objections). Nonetheless, Norfolk attempts to identify the contested evidence and defend its use in each instance. (ECF No. 70, Reply, PageID 2394–98). To the extent Norfolk properly discerns the contested evidence, it correctly argues that the evidence is either nonhearsay or meets a hearsay exception, and thus can be considered. (*Id.*). The Court overrules Baker Hughes's objection.

### C. Count I: Failure to Pay Rail Common Carrier Freight Charges

Norfolk sues Baker Hughes for failure to pay common carrier freight charges in the amount of $469,586.21. Norfolk argues Baker Hughes was FDF's principal and is thus liable for FDF's failure to pay pursuant to its obligations under the bills of lading. Baker Hughes argues the opposite – that it is absolved from liability

because the bills of lading do not establish FDF's liability as the shipper, and because it is not FDF's principal under Ohio's law of agency. According to Baker Hughes, it was Silver Creek that was liable under the bills of lading, and it was Silver Creek that was FDF's principal. The Court will address FDF's liability under the bills of lading, then the issue of whether Baker Hughes was FDF's principal.

### 1. FDF's liability as the shipper

Both bills of lading identify FDF as the shipper of the subject freight, identify Silver Creek as the "bill to" party, and are marked "prepaid." (ECF Nos. 61-4, 61-16, 61-17; See also ECF No. 62, Franklin Depo, PageID 1386). Neither Norfolk nor Baker Hughes identifies a separate agreement to which Norfolk was a party that allocated liability away from FDF. The Section 7 boxes on the bills of lading (which, if checked, would release the shipper from liability) are not checked. (ECF Nos. 7-2, 61-16, 61-17).

"The bill of lading is the basic transportation contract between the shipper-consigner and the carrier; its terms and conditions bind the shipper and all connecting carriers." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982). A party listed as the shipper-cosigner on a bill of lading is presumptively liable for freight charges. *Id.* at 343–44.

> The consignor, being the one with whom the contract of transportation is made, is originally liable for the carrier's charges and unless he is specifically exempted by the provisions of the bill of lading, or unless the goods are received and transported under such circumstances as to clearly indicate an exemption for him, the carrier is entitled to look to the consignor for his charges.

7

*Id.* at 343 (internal quotations omitted); *see also Nat'l Bankers Trust Corp. v. Peak Logistics LLC*, No. 12-2268-STA-tmp, 2013 WL 1411237, at *3 (W.D. Tenn. Apr. 8, 2013).

A shipper may rebut the presumption created by the bill of lading by showing that (1) it was not acting on its own behalf; (2) this fact was known by the carrier; (3) the parties intended another person assume the primary obligation to pay; and (4) the parties intended that the shipper or consignor "should not assume any liability whatsoever." *CSX Transp., Inc.*, 618 F. Supp. 2d at 767 (citing *Louisville & Nashville Co. v. Cent. Iron & Coal Co.*, 265 U.S. 59, 67–68 (1924)). These factors are satisfied, and the shipper's liability transferred, when the shipper marks the Section 7 nonrecourse box on the bill of lading. *Id.*

> The uniform bill of lading [creates] default standards for liability, while still allowing the parties to contract around those standards by the "simple expedient" of checking the Section 7 nonrecourse box on the face of the bill of lading. The uniform bill of lading in general, and Section 7 in particular, loses its utility if [….] the carrier cannot rely on unambiguous representations contained on the face of the bill in determining how to allocate liability for freight charges.

*Id.* at 768 (internal citations omitted).

In this case, the Section 7 boxes were not checked but the bills of lading identified Silver Creek as the "bill to" party. While the Sixth Circuit has not discussed the effect of directions to bill third parties on the face of a bill of lading, other courts have held that "send freight bill to" or "party to receive freight bill" language alone is not sufficient rebut the presumption that the named shipper is primarily liable. For example, in *Oak Harbor Freight Lines, Inc. v. Sears Roebuck &*

8

*Co.*, the court held that absent a Section 7 nonrecourse designation or separate agreement allocating responsibility away from the named shipper, a bill of lading marked "prepaid" that instructed the carrier to send freight bills to a third party was not sufficient to shift liability away from the shipper. 513 F.3d 949, 953–55 (9th Cir. 2008); *see also Missouri Pac. R.R. Co. v. Ctr. Plains Indus., Inc.*, 720 F.2d 818, 819 (5th Cir. 1983) (holding that the "send freight bill to" language on its own was insufficient to transfer the obligation of payment); *CSX Transp., Inc. v. Meserole Street Recycling*, 618 F. Supp. 2d 753, 767–68 (W.D. Mich. 2009) (finding that the "Send Freight Bill To" language on the bill of lading merely indicated that the carrier expected payment from either the consignee or shipper but did not explicitly release the shipper from liability). If a party wants to transfer of liability from the named shipper to a third party, it may do so by "'exercising the privilege made available by Section 7 of the Contract Terms and Conditions printed . . . on the bill of lading by the simple expedient of marking the Section 7 box[.]'" *Nat'l Bankers*, 2013 WL 1411237, at *4 (quoting *Missouri Pac. R.R.*, 720 F.2d at 819).

The facts in this case are analogous to those in *Oak Harbor Freight Lines*, where the bill of lading was marked "prepaid," identified a "bill to" party and a shipper, and contained no Section 7 designation. Under those facts, the named shipper was presumed to be liable and the existence of a "bill to" party on the bill of lading was insufficient to rebut that presumption. So to here, FDF's status as the named shipper creates a presumption of liability that is not rebutted simply by Silver Creek's status as the "bill to" party.

9

Accordingly, there is no genuine dispute of material fact that FDF is liable to Norfolk under the bills of lading for failure to pay freight charges.[1]

### 2. Whether Baker Hughes is FDF's undisclosed principal

Having established that FDF is liable as the shipper on the bills of lading, the Court turns to whether Baker Hughes is liable to Norfolk as FDF's undisclosed principal.

Norfolk argues that the evidence demonstrates that FDF submitted the shipping instructions for the bills of lading on behalf of and under the control of Baker Hughes. (ECF No. 64, PageID 1554–59; ECF No. 67, PageID 2357–61). On the other hand, Baker Hughes argues (1) that Silver Creek (not Baker Hughes) had control over FDF when the freight was shipped, and (2) that FDF did not have actual authority to contract on behalf of Baker Hughes. (ECF No. 68, PageID 2371–74; ECF No. 69, PageID 2384–85).

"When an agent contracts for the benefit of an undisclosed principal, both the principal and agent are jointly and severally liable for a breach of the agreement." *Wahab Janitorial Servs. v. P.M. Group Mgmt.*, 831 N.E.2d 522, 524 (Ohio Ct. App. 1st Dist. 2005).

> [T]here are four elements of an agency relationship: "Agency is the fiduciary relation which results from [1] the manifestation of consent by one person to another that the other shall [2] act on his behalf and [3] subject to his control, and [4] consent by the other so to act."

---

[1] Because FDF is plainly liable under the bills of lading, the Court need not address the parties' arguments over whether issue preclusion bars Baker Hughes's denial of FDF's liability.

10

*Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 567 (6th Cir. 2006) (quoting *Berge v. Columbus Cmty. Cable Access*, 736 N.E.2d 517, 531 (Ohio Ct. App. 10th Dist. 1999)).

Applying the first and second agency factors, Baker Hughes manifested consent that FDF act on its behalf when it instructed FDF to enter the shipping instructions into the BNSF portal and to release the freight. (ECF No. 61-14, PageID 1206–07; Richard Depo, PageID 893). FDF carried out these instructions. (Richard Depo, PageID 893–96, 985–86).

Turning to the agency factor of control, Baker Hughes controlled FDF's actions. Baker Hughes disputes this by arguing that "FDF did not create, produce, or submit" the bills of lading.[2] (ECF No. 68, Resp., PageID 2368). Instead, Baker Hughes points out that Silver Creek and BNSF worked together to complete the bills of lading and that Silver Creek had to give its approval before FDF would release the rail cars. (*Id.*, PageID 2369; ECF No. 65, Mot., PageID 1590–91). This argument is a red herring. Whether FDF itself created, produced, or submitted the bills of lading at the direction of Baker Hughes does not change the outcome in this case. Neither does Silver Creek's necessary involvement in the shipments. Rather, it is undisputed that FDF is the named shipper on the bills of lading, and that FDF

---

[2] The deposition statements cited by Baker Hughes in support of this argument are, at best, ambiguous. Regardless, FDF was involved with finalizing the shipping terms and the bills of lading. (ECF Nos. 61-16, 61-17; Richard Depo, PageID 885–86). If it believed the bills of lading were incorrect, it could have corrected them before releasing the frac sand.

11

first released the frac sand for shipment at the behest of Baker Hughes. (Richard Depo, PageID 893, 978–80).

Silver Creek may have had some control over FDF and the frac sand shipments,[3] but Silver Creek's involvement does not eliminate Baker Hughes's own control of FDF – which is evidenced in several ways. Baker Hughes provided FDF with information on where the frac sand was to be shipped and who was to be billed for the shipments. (Richard Depo, PageID 978–980). FDF already knew the identity of the rail cars and their location origin because FDF had previously shipped the frac sand. (*Id.*, PageID 880, 906). FDF followed orders from Baker Hughes to enter these shipping instructions into the BNSF system and to release the freight to BNSF for shipment. (*Id.*, PageID 885–86, 879, 893–96, 986–87).

FDF would not have acted without instruction from Baker Hughes. When asked whether FDF would have shipped the sand to California if instructed to do so by Baker Hughes, Mr. Richard responded, "[y]es. As long as [Baker Hughes] had given us an order and had the pattern set up, we would—we would have followed orders." (Richard Depo, PageID 903–04). The opposite was also true – if Baker Hughes had not given FDF orders to ship the sand to Ohio, FDF would "not have

---

[3]To resolve this case, the Court need not determine whether Silver Creek was also FDF's principal because, even if it were, the mere existence of dual agency does not relieve Baker Hughes of liability. *See Swiss Reinsurance Am. Corp. v. Roetzel & Andress*, 837 N.E.2d 1215, 1221 (Ohio Ct. App. 9th Dist. 2005) (holding that an agent can "properly serve both parties so long as the duties were consistent").

12

taken any of the actions that [it] took regarding either of the two shipments." (*Id.*, PageID 989; *See also id.*, PageID 905).

Nonetheless, Baker Hughes argues that it relinquished all control over FDF after it conveyed ownership in the frac sand to Silver Creek because the freight could not move until Silver Creek set up shipping patterns and instructed FDF to release the rail cars. (ECF No. 65, Mot., PageID 1600–01). However, the appropriate inquiry is not who owned the frac sand at the time of its shipment, but whether Baker Hughes controlled FDF when it instructed FDF to upload shipping instructions and release the rail cars for shipment. And on that, the record is clear that Baker Hughes controlled FDF's actions.

Turning to the final agency element of consent by the agent, Baker Hughes gave FDF instructions with the expectation they would be followed; FDF consented to act pursuant to those instructions because it followed them, and in doing so, acted with actual authority. *See Pavlovich*, 435 F.3d 560 at 568 (holding that an agent acts with actual authority when the principal intentionally grants such authority to the agent).

Mr. Richard's testimony that he did not believe that FDF was an "agent" with "the authority to bind Baker Hughes" is irrelevant. (Richard Depo, PageID 923). Ohio law disregards titles used between parties and focuses on the control the principal exerts over the agent and the agent's consent to act according to the principal's direction. *See Amerifirst Savings Bank of Xenia v. Krug*, 737 N.E.2d 68, 79 (Ohio Ct. App. 2nd Dist. 1999).

13

Accordingly, there can be no genuine dispute based on undisputed facts that Baker Hughes was FDF's undisclosed principal.

### 3. Norfolk is granted summary judgment in the amount of $469,686.21 for unpaid freight costs, plus a 12 percent annum finance charge and attorney's fees and costs

Norfolk's Conditions of Carriage, which governed the subject transactions, were automatically accepted by FDF upon the issuance of the bills of lading. (ECF No. 61-22, PageID 1256–57; Harris Decl., PageID 1045–46). Pursuant to those terms and as evidenced by Norfolk's freight bills (ECF Nos. 61-5, 61-6) and computation of charges (ECF No. 61-7), the unpaid freight costs are $469,686.21. The Conditions of Carriage also allow Norfolk to collect a finance charge of 0.0329 percent per day (12 percent annum) and attorney's fees and costs for collection. (ECF No. 61-22, PageID 1270). Although Baker Hughes does not dispute the calculation of the amount charged, it does dispute whether it is bound by Norfolk's Conditions of Carriage, arguing that neither it nor FDF agreed to the Conditions and had no knowledge of Norfolk's involvement in the shipments. (ECF No. 68, Resp., PageID 2374). However, FDF agreed to the Conditions as the named shipper on the bills of lading. (See ECF No. 61-22, PageID 1256). Therefore, Baker Hughes is also bound by the Conditions as FDF's principal.

Accordingly, Norfolk's Motion for Summary Judgment on Count I is **GRANTED** and Baker Hughes Motion for Summary Judgment on the same is **DENIED**. Summary judgment is granted in the amount of $469,686.21 plus a 12 percent annum finance charge and attorney's fees and costs.

14

### D. Counts II and IV: Breach of Contract and Promissory Estoppel

Norfolk failed to respond to Defendant's Motion for Summary Judgment (ECF No. 65) on Count II (breach of contract) and Count IV (promissory estoppel).

The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 Fed.Appx. 368, 372 (6th Cir.2013) (collecting Sixth Circuit cases affirming grants of summary judgment when non-movant fails to defend a claim in response to summary judgment motion). *Kline v. Mortg. Elec. Sec. Sys.*, 154 F. Supp. 3d 567, 572 (S.D. Ohio 2015), aff'd sub nom. *Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451 (6th Cir. 2017). *See also Anglers of the Au Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

The Court deems Norfolk's claims for breach of contract (Count II) and promissory estoppel (Count IV) abandoned. Baker Hughes is entitled to summary judgment on those claims. Accordingly, Norfolk's Motion for Summary Judgment (ECF No. 64) on Counts II and IV is **DENIED**. Baker Hughes Motion for Summary Judgment (ECF No. 65) on the same is **GRANTED**.

### E. Counts III and V: Equitable Claims

In the alternative, Norfolk brings claims for unjust enrichment (Count III) and quantum meruit (Count V). "Where the parties have an enforceable contract

15

and merely dispute its terms, scope, or effect, one party cannot recover for . . . unjust enrichment" or quantum meruit. *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996); *Bender v. Logan*, 76 N.E.3d 336, 357 (Ohio Ct. App. 4th Dist. 2016) (holding that a plaintiff "may not recover in quantum meruit when an express contract governs the parties' obligations"). Here, the bills of lading are binding transportation contracts that govern the parties' obligations. Thus, recovery under the theories of unjust enrichment and quantum meruit is precluded. *Foster*, 2020 WL 5943021, at *12.

Accordingly, Norfolk's Motion for Summary Judgment on Count III (unjust enrichment) and Count V (quantum meruit) is **DENIED** and Baker Hughes Motion for Summary Judgment on the same is **GRANTED**.

### III.  MOTION FOR SANCTIONS AND TO PRECLUDE TESTIMONY

Norfolk moved for sanctions and to preclude testimony under Federal Rule of Civil Procedure 37(d) against Baker Hughes for failure to produce Jeff Mathews and Travis Frakes for deposition. Norfolk seeks costs and reasonable attorney's fees associated with litigating this Motion and asks the Court to preclude Baker Hughes from using future testimony of Mathews and Frakes.

Because all claims have been resolved by this Opinion and Order on the parties' cross motions for summary judgment, no future testimony is necessary. Accordingly, Norfolk's Motion (ECF No. 49) is **DENIED** as moot.

## IV. CONCLUSION

Norfolk's Motion for Summary Judgment (ECF No. 61) is **GRANTED** in part and **DENIED** in part. Judgment shall be entered for Norfolk in the amount of $469,686.21 plus the finance charge and attorney's fees and costs.

Baker Hughes Motion for Summary Judgment (ECF No. 65) is **GRANTED** in part and **DENIED** in part.

Norfolk's Motion for Sanctions (ECF No. 49) is **DENIED**.

The Court directs Baker Hughes to either resolve any remaining issues with the third-party Defendants or file a status report indicating how it will proceed against the third-party Defendants within **fourteen (14) days** of the date of this order.

The Court directs Norfolk Southern's counsel to submit a motion for attorney's fees and costs within **fourteen (14) days** of the date of this order. The briefing schedule under the Court's Local Rules will apply to that motion.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**